We have Mr. Chavez's counsel appearing by Zoom and we have the government here in the courtroom. So Mr. Dubey, is that how you pronounce your last name? It is. I see you reserved three minutes for rebuttal and you can begin whenever you're ready. If the court pleases, good morning everyone. My name is Chris Dubey. I represent the appellant, Raul Chavez, in this matter. I've submitted arguments supporting the district court's denial of my client's motions for a new trial and a judgment of acquittal and I'm willing to stand on those arguments this morning. Obviously, if the panel has questions, I'll certainly answer them in entertainment. To be succinct, the references to my client's incarceration during the government's closing was improper and the second basis for the judgment of acquittal that was denied was the introduction of co-conspirator statements that had more to do with other incidents, not the August 23, 2014 transaction resulted in my client's arrest. Either of those, I believe, is a basis for a new trial and the government was able to prove, I mean obviously, that my client was present on August 23, 2014, but not that he had done anything particularly criminal with regard to that specific issue. So it's our argument that the proof was lacking in that regard, which is the basis for the finding of the motion for a new trial. That is what I have to offer the panel. Let me ask you about the issue of your client's incarceration coming up and obviously that's something that normally would be irrelevant and certainly prejudicial, but there was cross examination of the government agent regarding things that the agent should have done, investigative techniques that should have been used against your client that were used against the other, Mr. Rosales and others, and it was pretty extensive and there was actually no objection when the government on redirect brought out the fact that the reason those techniques were not used against your client was that your client was incarcerated. So in that context, especially because it was unobjected to, how could it be prosecutorial misconduct to refer to something that the prosecutor was allowed without objection to elicit during the testimony? Judge, it's a fair question and I don't have a very long answer. In fact, it's a succinct one. I think it was fair to conduct a cross exam, or I guess the redirect, the way the government did it at the trial, but the use of it during the closing with the insinuation being unable to be responded to is what makes it unfair. Well, I mean, in the closing, 943, 944, the government appendix, I mean, it wasn't like the government mentioned it in their rebuttal out of the blue. There were pages in the defense summation referring to that cross examination and listing, essentially, technique by technique, consensual recordings, in-person recordings, teltransmitters, wiretaps, GPS warrants, all these things, and comparing it to the other, you arrest someone and they turn like Mr. Rosales did and they begin providing information and they wear a wire or they record people's phone calls suggesting that they should have had Mr. Rosales do those things when he was completely incapable of doing those things because your client was in jail. So it wasn't the government then brought it out in response to nothing. It was a pretty extensive point in the summation, wasn't it? It was, and I don't mean to suggest they brought it up out of nothing. It's just the timing in which they brought it up, Your Honor. I don't know that bringing something up that potent at that point in the case is what makes it unfair. I agree with the panel, or at least you, Your Honor, that there was an evidentiary basis for it, but not the way in which it was used and especially the timing. The argument to me sounded like the guilt is based in part on that he was in jail at the time and these things could be done. It was more than just an explanation as to why certain investigative techniques weren't used. And then my other question is on the sufficiency point. You mentioned that in terms of the key meeting, the 23rd, that there was insufficient evidence, I guess, linking your client to the transaction, but the government had multiple cooperating witnesses who testified, Rosales, Wellborn, your client's son, although your client's son was not directly involved in that meeting, but certainly Wellborn and Rosales testified to your client's conversations and knowledge with respect to what was going on there. So why isn't the jury able to credit them and therefore provide sufficient evidence for guilt? I believe, Your Honor, the jury is absolutely entitled to credit them provided they're all talking about the same thing. And it's, frankly, from my experience, not a very simple matter to make allegations and indictment if you're the government and then have the proof line up exactly because sometimes these relationships go wrong between co-conspirators in an 841 transaction or 841 conspiracy. I guess my point here is that my client was definitely present for whatever happened, whatever you want to label what happened on August 23rd, 2014, but his involvement in that specific transaction is what got conflated with a lot of other evidence. All right. All right. Thank you, Mr. Newby. We'll hear from the government. Mr. Durham. Good morning, Your Honor. I'm here to report Ray Durham on behalf of the appellee of the United States of America. And counsel has reiterated the claims on appeal that the district court improperly denied his motion for judgment of acquittal pursuant to Rule 29, as well as motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Both of those motions were properly denied, and the claims that are now reiterated on appeal are without merit, and the government would ask the court to affirm the judgment. In terms of the first argument regarding the sufficiency of the evidence, I think the court's already pointed out to some of the issues in that Mr. Chavez's appeal seems to cherry-pick certain pieces of evidence while ignoring sort of the entirety of the trial record. There were no less than three co-conspirators who were part of the trial evidence, Tyshawn Wellborn, Jesse Rosales, and Christopher Chavez, who all testified regarding Mr. Chavez's involvement in the conspiracy. Additionally, there was cell tower evidence, call detail records, text messages, which all served to corroborate the testimony of those co-conspirators. As Judge Meyer indicated in denying the motion, the evidence was easily sufficient and overwhelmingly established the defendant's knowing and willful participation in the charged conspiracy. On the second claim, Mr. Chavez alleges that there were co-conspirator statements that were improperly admitted. He doesn't identify any particular statement that he finds problematic, which makes it difficult to assess whether there was an erroneous factual finding or determine whether the decision was within the range of permissible decisions. Certainly, again, we would reiterate that the evidence was overwhelming, that there was a conspiracy, that the defendant was a member of the conspiracy. Any declarant statements came from members of the conspiracy and that they were made in furtherance of the conspiracy. So there was nothing sort of pointed to or cited there that could rise to the level of establishing any real concern with the verdict and with the defendants having been convicted. On the third claim, which again relates to the motion for a new trial, regarding comments made in closing argument, and again, as Judge Meyer pointed out, there was nothing remotely improper about the statements made in closing argument. Defense counsel for Mr. Chavez opened the door to discussion regarding Mr. Chavez's incarceration. He did so tactically and with knowledge that he was opening the door to that line of inquiry and certainly was part of the defense's theme to point to various steps that the government didn't take. But also in terms of the timing, the suggesting of steps the government did take in the absence of any evidence of Mr. Chavez during those particular investigative efforts. So in that sense, it was perfectly appropriate for the government to point out why Mr. Chavez wasn't tied up in those subsequent activities or events. So unless the, your honors, have any questions, the government would rely on the arguments in our brief and we ask to affirm the judgment. Thank you. Thank you. Thank you, Mr. Durham. Okay, Mr. Doobie, you have three minutes. Your honor, if the panel has any questions for me, I'll happily entertain them. I don't have any interest in speaking before the panel without anything to say. So if there's no more questions for me, I consider the case submitted and the panel is okay with that. I don't think there are any other questions. Thank you. Thank you. We'll reserve the decision. Have a good day. Thank you, you too.